BEULAH C. HUMPHREY, APPELLEE, v. CARL M. HUMPHREY, APPELLANT.

340 N.W.2d 381

Filed November 18, 1983. No. 82-612.

Sam Grimminger, for appellant.

John R. Hall of Anderson, Vipperman, Hinman, Hall & Kovanda, for appellee.

KRIVOSHA, C.J., HASTINGS, CAPORALE, and GRANT, JJ., and BRODKEY, J., Retired.

PER CURIAM.

This is a dissolution of marriage case. Petitioner-appellee, Beulah C. Humphrey, filed her petition on December 30, 1980, seeking such dissolution and a division of property. Respondent-appellant, Carl M. Humphrey, answered, seeking the same relief.

The case was tried on May 19 and June 11, 1981. At the conclusion of the trial the court made a docket entry, which was announced to the parties, finding that the marriage was irretrievably broken, dissolving the marriage, restoring appellee's former name of Knox, and taking the question of "property division, alimony, fees, etc.," under advisement.

On July 26, 1982, the court made the following docket entry: "Now on this day this cause came on for hearing. Each party is awarded personal property, including cash, in possession except as otherwise stated. Resp. is directed and returned [sic] to petitioner for items listed on Ex 20 or to account for same. Resp. awarded lumber business subject to debt. Petitioner awarded all real estate subject to debt, except resp. to pay PCA loan and hold petitioner harmless. Resp. granted use of 'Ravenna Place' so long as he resides there, pays taxes and keeps improvements insured and reasonably maintained. Petitioner to pay resp. $5,000. Each to pay own fees and costs."

On August 3, 1982, appellant filed his motion for new trial. This motion was overruled by journal entry on August 19, 1982, as follows: "THIS MATTER came on for hearing on this 19th day of August, 1982, on the Motion for New Trial filed by the Respondent. Both counsel were present. Argument was pre-

sented. The Final Decree was amended to award the 1966 Mack Truck to Respondent, on the condition that he remove it from the premises of Knox Construction within 30 days. The balance of the Motion for New Trial is overruled."

On August 30, 1982, appellant filed his notice of appeal and deposited the required docket fee, thus vesting jurisdiction of the case in the Supreme Court.

On September 14, 1982, a decree was signed by the District Court judge. This decree of eight pages purported to dissolve the marriage of the parties and disposed of the property of the parties in detail. The decree concluded with the words, "This decree shall not become final for a period of six (6) months from the date hereof, except for purposes of appeal, during which time the parties shall remain married to each other."

We set out the procedural facts above to show the very real possibilities of confusion that the court has engendered by the procedures used in the case. Aside from the unexplained and wholly improper delay of over 13 months between the time of the entry dissolving the marriage of the parties on June 11, 1981, and the entry briefly disposing of the parties' property on July 26, 1982, the practice of bifurcating a dissolution of marriage case in any manner, and with any timelag, is expressly disapproved by this court. The essence of a dissolution case is the marriage between the parties. From that marriage relationship stem rights to property in each of the marriage partners. It serves no interest of any party to dissolve the marriage itself without simultaneously determining all property rights of the married parties. It is pointless to declare people no longer married but to confine them in a property relationship that knows no legal name. The bills go on, the receipts may flow in, but neither party knows his or her duties to pay, or rights to receive. Is the legal relationship a partnership, a joint venture, two

sole proprietorships, or what? What has actually happened in this case is unknown from the record. Since March 10, 1983, when appellee's brief was filed, there is nothing formal before this court except for oral argument held in October of 1983.

We recognize, of course, that we are now reviewing a situation as of June 11, 1981. The possible problems are legion and apparent to all. Whatever personal convenience a court may confer on parties by granting an immediate dissolution while retaining property jurisdiction cannot be worth the difficulties and problems to which the trial court is exposing the litigants. The litigants deserve better.

Fortunately, in this case so far as we are informed, no question as to the effective date of the dissolution is before us. Apparently, neither of the parties has died—thus avoiding any question as to the effect of a death at one time or another. Even the fact that the decree was signed some 15 days after the District Court lost jurisdiction does not pose a problem in this case. The decree merely recited, in proper detail, the determination of the court on July 26, 1982, as to the property rights of the parties. A proper motion was directed to that order of July 26, 1982, and the case is properly before us after the denial of the motion for new trial.

We turn to the facts of the case. The parties met in the summer of 1976, when appellee apparently answered an advertisement that appellant had placed in a newspaper. The parties occupied the same residence, off and on, from the fall of 1976 up to the date of their marriage on March 19, 1979. There were times when they were separated before the marriage. During at least one of these times, appellant was visited in Grand Island by another woman whom he had met by mail. During the time of the parties' association, appellant testified that from 1 to 25 other women visited him at his residence.

During the time of their association before the marriage, appellant engaged in various ventures:

cattle feeding, raising hogs, farming, etc. Appellee loaned money to appellant for some of those purposes. The testimony is obscure as to profits, losses, payments, loans, or other business transactions. It is apparent that the parties together engaged in various business enterprises before the date of the marriage. The source of the funds for these enterprises is not clear, although it is apparent that moneys flowed from appellee to appellant. As an example, exhibit 35, introduced into evidence and testified to by appellant, shows that appellant, from January 2, 1979, to March 9, 1979, wrote 54 checks, totaling $570,523.47, "for livestock." The source of such sums is never explained. The disposition of the "livestock" is not shown. When this testimony is considered with the fact that appellant had not filed any income tax returns for the years 1975 through 1979, and with the fact that appellee's separate income tax return for 1979 shows no income or loss from the sale of livestock in farming operations, it is clear that the business relations between the parties cannot and should not be considered in this dissolution case. The form of business association between the parties and the details of their transactions are impossible to reconstruct from the evidence before the trial court or before us. Appellee does not claim any amounts due from appellant on account of loans. Accordingly, we leave the parties as we find them with respect to all of their financial transactions before the date of the marriage, with the sole exception of a residence property purchased jointly before the marriage. As to this residence, the evidence shows that appellant contributed $7,612.39 toward its purchase.

When the parties first met, and apparently on the date of the marriage, appellant owned a Mack truck with a $1,250 mortgage on it. Appellee arranged to pay this loan off. Appellant also testified that in 1975 he had $20,000 from the equity in a house he owned in Washington. Later, appellant testified

that he did not sell the Washington land for more than he had in it. It does not appear that appellant had any assets other than the money put into the residence referred to above.

Other evidence shows checks from appellee to appellant in varying amounts, such as $4,800 (described as "farm contract," exhibit 67); $3,500 (for "farm implements," exhibit 68); and many other checks for "repairs." Additionally, on March 13, 1979 (6 days before the marriage), after appellee gave appellant a check for $6,000 appellant gave appellee a check for $6,000. Appellee's check was promptly cashed, but appellant's check was never good and was returned by the bank to appellee.

From all of these financial transactions the court finds that at the time of the marriage appellant had a Mack truck and had invested approximately $7,612.39 in a house. For a marriage of such a short duration as this marriage, it appears that appellant has been treated more than fairly in the decree that the trial court entered, wherein appellant received a lumber business with an inventory of over $14,000, $5,000 in cash, his Mack truck, and the use of certain land.

We hesitate to approve the provisions of a dissolution decree where the parties are tied together in the fashion set out in the court's docket entry of July 26, 1982; i.e., when real property is given to appellee, but appellant is "granted use of 'Ravenna Place' so long as he resides there, pays taxes and keeps improvements insured and reasonably maintained." When appellee asks that the trial court's decision be affirmed, however, we see no need to intervene. The judgment of the trial court is affirmed.

AFFIRMED.