SHERRI K. GERBER, APPELLEE, V. HELMUT GERBER, APPELLANT.
353 N.W.2d 4

Filed August 3, 1984.   No. 83-749.

Cunningham, Blackburn, VonSeggern, Livingston, Francis & Riley, for appellant.

Gwyer Grimminger of Grimminger & Milner, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

The legal problems in this dissolution of marriage case are a natural extension of the problems this court discussed in *Humphrey v. Humphrey*, 215 Neb. 664, 340 N.W.2d 381 (1983). In that case we stated at 666-67, 340 N.W.2d at 383, that

> the practice of bifurcating a dissolution of marriage case in any manner, and with any timelag, is expressly disapproved by this court. The essence of a dissolution case is the marriage between the parties. . . .
>
> . . . Whatever personal convenience a court may confer on parties by granting an immediate dissolution while retaining property jurisdiction cannot be worth the difficulties and problems to which the trial court is exposing the litigants.

We went on to state that it was fortunate that there was no question presented in that case, so far as we were informed, as to the effective date of the dissolution of marriage.

That question is now before us. In this case Sherri Gerber, wife and appellee, filed her petition for dissolution of her marriage to Helmut Gerber, husband and appellant, on May 17, 1982. The case was tried on November 16, 1982. The wife

adduced only her testimony, showing that the parties were married on August 7, 1972; that three children were born of the marriage; that the parties had acquired real and personal property during the marriage; that the marriage was irretrievably broken; and that the wife should have custody of the children. The husband then testified as to the marriage, and as to the parties' children and the property. The husband specifically testified that the marriage was not irretrievably broken and that he believed the marriage could be saved by counseling. The trial court then stated from the bench:

> BY THE COURT: The court finds that the marriage is irretrievably broken and it is hereby dissolved. The temporary orders concerning custody of the children, visitation with the noncustodial parent, support, and the injunction on each party against the disposition of property or acquisition of debts and disturbing the peace of the other will be continued in effect. The court will obtain a study of the home of each parent, from the respective welfare departments, and have those reports available. Copies of teh [sic] reports will be furnished to counsel, who will then be able to request the reopening of the evidentiary record on the issue of support, if you feel it appropriate in light of the reports.
>
> All other matters are reserved until that evidence is made available.
>
> You're excused.

Unsigned "court notes" in the transcript show the following on November 16, 1982:

> Now on this day this cause came on for hearing. Parties present w/counsel. Evidence presented. Birth of Elizabeth 1/14/75, David 6/28/77, and Helmut, Jr. 1/4/81. Court finds marriage is irretrievably broken and it is dissolved. Temporary orders re custody, visitation, support and injunctions continued in effect. Home studies to be obtained of home of each parent from respective county welfare departments. Copies will be furnished to counsel who may then request to reopen record re custody and support.

At an interim hearing on April 20, 1983, the court, as shown

by unsigned "court notes," found the husband to be in arrears on child support payments but not in contempt of court. The court ordered that legal custody of the children should be in the court with "physical custody" in the wife. The court also set out visitation rights and ended the notes, "Property division under advisement." The temporary restraining order and temporary support orders entered earlier were continued in effect.

On September 22, 1983, the court signed a journal entry reciting that on November 16, 1982, the matter came on to be heard, and stating in part: "The Court finds that the marriage is irretrievably broken and it is dissolved. That Temporary Orders concerning custody, visitation, support and injunctions to continue in effect."

This signed journal entry goes on to state: "NOW on this 20th day of April, 1983, this matter comes on to be heard before the Court upon the Motion for Temporary Custody . . . filed herein by the Respondent"; and later, "NOW on August 29, 1983, this matter comes on to be heard before the Court on the Motion to change custody . . . filed herein by the Respondent"; and still later, "NOW on September 6, 1983, this matter comes on to be heard further for decision by the Court."

The September 22, 1983, journal entry does dispose of the property (by ordering, with certain exceptions, all the real and personal property to be sold and the proceeds divided 60 percent to husband and 40 percent to wife), but it does not dispose of the custody issue (other than reciting the order entered as to temporary custody as of April 20, 1983) nor the support issue. The end result is total confusion, including the effective date of the dissolution of the marriage, if there ever was a dissolution. In oral argument we are informed that appellee has remarried at some time unknown to this court.

Appellant husband filed a notice of appeal on September 23, 1983, giving notice of "his intent to appeal the decision of the Court entered on August 29, 1983 denying Respondent's Motion for change of custody and contempt citation, and further order of the Court entered on September 6, 1983, ordering property division and child support." Appellant assigns seven errors, including the assignment, "The trial court erred and abused its discretion to the detriment of the parties by

taking under advisement and being dilatory in the resolution of the issues of the case, specifically property disposition, from November 16, 1982, to September 6, 1983." Brief for Appellant at 3. While we agree wholeheartedly with that statement, we cannot reach that issue and dispose of this case. As stated in appellee's brief at 5, "It is questionable that there is a final order of disposition of this matter sufficient to grant jurisdiction upon this court." We hold that in this welter of confusion, there is no final order that may be appealed from as to *any* of the issues between these parties, including the issue of dissolution of the marriage.

We note specifically that the wife's petition in this case and the responsive pleading of the husband put in issue the marriage relationship itself, custody and support issues concerning the children, and the parties' property rights. We are not faced with the situation where the pleadings present less than all issues between the marriage partners, such as might be the case in an action brought under Neb. Rev. Stat. § 43-512.04 (Reissue 1978), where a party might seek child support only. In this case, as presented, we adopt the statement set out in *Z & S Constr. Co., Inc. v. Collister*, 211 Neb. 348, 350, 318 N.W.2d 728, 729 (1982), "When, as in this case, substantial rights of the parties remain undetermined and the cause is retained for further action, the order is interlocutory and not final. . . . There being no final order in the District Court, the appeal is dismissed." We apply this holding to dissolution of marriage cases.

The appeal is ordered dismissed. The district court is ordered to, within 5 days of the entry of the mandate from this court, determine all issues between these parties and to make findings and orders as to *all* issues between these litigants.

APPEAL DISMISSED, AND CAUSE
REMANDED WITH DIRECTIONS.

SHANAHAN, J., dissenting.

The majority promulgates a procedural precept: no bifurcation (disposition of issues in separate trials). We have moved from disapproval of bifurcation in *Humphrey v. Humphrey*, 215 Neb. 664, 340 N.W.2d 381 (1983), to prohibition in *Gerber*.

The majority requires that a trial court must have disposed of

every issue arising out of a dissolution proceeding before there is a final or appealable order. Consequently, whether a marriage is irretrievably broken, issues with respect to children (custody, visitation, and support) and issues involving alimony and marital property are absolutely inseparable and require collective disposition in order that a decree be subject to appellate review. However, we are overlooking the fact that those issues mentioned are distinct and essentially severable in a dissolution proceeding so that separate disposition is possible.

Bearing in mind that the Legislature has prescribed the statutory format for dissolution proceedings, there is no statutory prohibition of bifurcation in Nebraska's dissolution statutes. To the contrary, our statutes permit discretionary bifurcation; for example, "When dissolution of a marriage or legal separation is decreed, the court *may* include such orders in relation to any minor children and their maintenance as shall be justified" (emphasis supplied) (Neb. Rev. Stat. § 42-364 (Cum. Supp. 1982)); and "When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as *may* be reasonable" (emphasis supplied) (Neb. Rev. Stat. § 42-365 (Cum. Supp. 1982)).

Other jurisdictions with dissolution statutes similar to Nebraska law have construed such statutes as discretionary permission for bifurcation. See, *Putnam v. Fanning*, 495 S.W.2d 175 (Ky. 1973); *Drew v. Drew*, 309 Minn. 577, 244 N.W.2d 491 (1976); *In re Marriage of Fink*, 54 Cal. App. 3d 357, 126 Cal. Rptr. 626 (1976); *Hyman v. Hyman*, 310 So. 2d 378 (Fla. App. 1975). One does not have to strain the imagination to envision situations where the best interests of the children or parties would be more suitably served through bifurcation, or where failure to bifurcate will work unnecessary hardship on those affected by a dissolution. Bifurcation should not occur merely for convenience of the litigants. Nevertheless, because there will be as many and varied situations as there are people involved in dissolutions, separate and final disposition of issues should be allowed in exceptional cases at the discretion and sound judgment of the district courts upon a showing of good cause. Prohibition of bifurcation presents a tidy and

ordered judicial package, but people affected by dissolutions do not always have lives in a tidy and ordered package. A monolithic judicial mandate against bifurcation may ultimately become a source of hardship and more hurt in already painful situations.