SHERRI K. GERBER, APPELLEE, V. HELMUT GERBER, APPELLANT.
407 N.W.2d 497

Filed June 12, 1987.   No. 86-678.

James D. Livingston of Cunningham, Blackburn, Livingston & Francis, for appellant.

Gwyer Grimminger of Grimminger & VonSeggern, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

PER CURIAM.

On May 17, 1982, Sherri K. Gerber filed her petition in the district court for Hall County, Nebraska, and sought a dissolution of her marriage with Helmut Gerber. The petition alleged that the Gerbers were married on August 7, 1972. As petitioner, the wife also requested a division of marital property and custody of the parties' minor children: Elizabeth Gerber, born on January 14, 1975; David Gerber, born on June 28, 1977; and Helmut Gerber, Jr., born on January 4, 1981. The case was heard on November 16, 1982, and on that date, as announced from the bench and shown in unsigned "court notes," the court found that the marriage of the parties was irretrievably broken and reserved all other dissolution matters for later disposition, when the parties might request to reopen the record regarding custody and support issues.

Petitioner "married" Kendall Soll on September 7, 1983. As shown in its journal entry, the court, on September 22, divided marital property between the parties but did not dispose of the custody and support issues. On September 23, respondent filed his notice of appeal to this court.

In our opinion issued on August 3, 1984, in *Gerber v. Gerber*, 218 Neb. 228, 353 N.W.2d 4 (1984), we noted our previous disapproval of bifurcated trials on issues in a dissolution proceeding, see *Humphrey v. Humphrey*, 215 Neb.

664, 340 N.W.2d 381 (1983), and stated:

> [T]here is no final order that may be appealed from as to *any* of the issues between these parties, including the issue of dissolution of the marriage.
>
> . . . In this case, as presented, we adopt the statement set out in *Z & S Constr. Co., Inc. v. Collister,* 211 Neb. 348, 350, 318 N.W.2d 728, 729 (1982), "When, as in this case, substantial rights of the parties remain undetermined and the cause is retained for further action, the order is interlocutory and not final. . . . There being no final order in the District Court, the appeal is dismissed." We apply this holding to dissolution of marriage cases.
>
> The appeal is ordered dismissed. The district court is ordered to, within 5 days of the entry of the mandate from this court, determine all issues between these parties and to make findings and orders as to *all* issues between these litigants.

(Emphasis in original.) 218 Neb. at 231, 353 N.W.2d at 6.

Sometime during October 1984, petitioner, with the Gerber children, moved to Fort Morgan, Colorado, where they resided with Kendall Soll. There was no further court activity in the case until October 31, 1984, when the court entered its "Decree," which, among its provisions, contained the following:

> 1. The marriage of the parties is irretrievably broken and was dissolved on November 16, 1982.
>
> 2. The legal custody of the minor children is retained by the Court and their physical custody is placed with petitioner under supervision of the Department of Social Services.

The decree of October 31, 1984, also set out respondent's visitation rights of his children and ordered respondent to pay child support. On November 2 respondent filed a motion for new trial and, on November 13, an "Application for change of custody . . . for the reason that the Petitioner, Sherri K. Gerber, has moved from the State of Nebraska without the permission of this Court and without any type of consent from your Applicant . . . ." That application was never submitted for disposition, and on November 20, in response to respondent's

motion, the court granted a new trial in the case.

In court notes under the date of November 21, 1984, there appears the following: "Motion for removal of minor children to Colorado [is] set for 11-27-84 @ 1:30 p.m." However, neither the motion for removal of the Gerber children to Colorado nor the date on which such motion was filed appears in the record presented to this court. As further reflected in the court's notes, on December 21, 1984, attorneys for the parties were present before the court when the court entered an order concerning respondent's visitation rights: "Resp's visittion [sic] to be every other weekend. 1 weekend in G.I. [Grand Island, Nebraska] Pet and Resp to each pay 1/2 transp and every other holiday. Resp to have visitation 12-22-84 thru 12-23-84 at the home of his parents." Later, in the court's notes, there appears the following as an entry on March 29, 1985:

Parties and attys present re Resp. app. for contempt order. Pet orally moves for modification of visitation rt. test and arguments heard. App for order of contempt denied. Visitation modified as follows on the weekends visitation. Resp. to have from 4 p.m. Friday to 7 p.m. Sunday. Ft Morgan time or wherever children reside. Pet to keep Resp's advised of her address or telephone # if any. Attys stip that the child Elizabeth visit with ct in chambers. Resp. to notify Pet at least 2 days prior to visitation.

The next activity in the case occurred on July 15, 1985, when, after a trial based on "the Bill of Exceptions submitted from the previous trial," the court entered a decree which recited: "That the marriage between the Petitioner and the Respondent is irretrievably broken . . . and the marriage is hereby dissolved." The July 15 decree then stated that petitioner was granted custody of the Gerber children, ordered respondent to pay child support for each of the Gerber children, and set forth respondent's "right to reasonable visitation with the minor children" at specific times on "every other weekend starting with the first weekend after this Decree is entered . . . ." The decree also contained:

It is recognized that the children are now residing outside of the State of Nebraska, and it is the responsibility of Petitioner to file appropriate pleadings in this Court,

requesting consent to reside with the children outside of Nebraska, at which time visitation schedules may be subject to modification upon the Respondent's request.

On July 17, 1985, respondent filed a motion for new trial, which was granted by the court on August 30.

Retrial occurred on October 28, 1985.

At trial, petitioner testified that she and the children reside in Fort Morgan, Colorado, and that Mr. Soll is gainfully employed. Petitioner also testified that Elizabeth and David were enrolled in school, where they were "doing fine . . . doing real good." At the time of trial Helmut, Jr., then 4 years of age, was not in any type of school. During the summer months the children participated in swimming and baseball. Elizabeth was receiving counseling from a school counselor for some condition which causes Elizabeth to cry, scream, and beg her mother "not to send [the Gerber children] back to her father's." Petitioner further testified about a time when Elizabeth went to visit the respondent for 2 days and returned with a broken arm, which had not been broken before visitation with the respondent. On one occasion, after Elizabeth's return from visitation with her father, the petitioner observed bruises on Elizabeth's buttocks. Also, petitioner testified about an incident after one of Helmut, Jr.'s, weekend visits with his father. As testified by the petitioner, Helmut, Jr.,

had a butcher knife stab wound in his hand and his hand was so infected you couldn't see his knuckles and we had to rush him to the hospital and get him a shot; and they said it should have had stitches, but it was too late so they taped it up with butterflies as good as they could and gave me antibiotics and gave him a shot and stuff.

Respondent testified that he lives in Grand Island, Nebraska, and it is approximately 1,000 miles round trip from Grand Island to petitioner's home in Colorado. Respondent also testified he never had any problems with the children. The respondent further testified that Elizabeth had sustained a broken arm when she fell from her bicycle and that the bruises on Elizabeth were present when respondent had picked up the children for visitation. The knife wound to Helmut, Jr., happened when the boy accidentally cut himself with a utility

knife, not a butcher knife as testified by the petitioner. Respondent then described summer visitation with the children, including such activities as swimming, roller skating, and bicycling. At the time of trial respondent was laid off from his employment at Sperry-New Holland and was self-employed in repair work of mobile homes. Respondent's employment involves between 30 and 50 hours per week for 2 weeks out of each month.

Trial concluded on October 28, and the matter was taken under advisement pending receipt of "home studies" suggested by the court.

On December 24, 1985, petitioner, with her attorney, and respondent's attorney appeared before the court concerning respondent's "motion for visitation over holidays." The court, on December 24, ordered respondent's visitation of his children for 2 days, that is, on December 26 and 28, from 9 a.m. to 7 p.m., at the home of respondent's parents.

When the hearing, which had been adjourned from October 28, 1985, resumed on July 17, 1986, apparently the home studies had been received but are not a part of the record presented to this court. At the hearing on July 17, the court found that the parties' marriage was irretrievably broken and placed custody of the Gerber children with the petitioner. The journal entry for the July 17 hearing recites:

> [This] matter came on for hearing on dissolution the 28th day of October, 1985, on which date testimony was taken and adduced and the matter adjourned pending receipt of a home study of the parties' homes rendered by appropriate agencies in Hall County, Nebraska, and Weld County, Colorado. Upon receipt of the referred to home studies, the matter was further heard on the 23rd day of June, 1986, and the matter was thereupon taken under advisement until this the 17th day of July, 1986.
>
> . . . .
>
> Petitioner is granted custody of the minor children, subject to Respondent's visitation as hereinafter set out:
>
> 1. Respondent shall be entitled to visitation with the minor children, in Fort Morgan, Colorado, the last Saturday of each and every month, between the hours of

10:00 A.M. and 6:00 P.M.

2. Respondent shall be entitled to visitation on every other 4th of July, Thanksgiving and Christmas Day, commencing on Thanksgiving, 1986, on which holiday Respondent shall be entitled to visitation.

a. On the concerned holidays, when Respondent shall be entitled to visitation, Petitioner shall deliver the children to an agreed upon place in Ogallala, Nebraska, where they shall be picked up by Respondent, no later than 8:00 A.M. on the concerned holiday and returned to that same place no later than 8:00 P.M. on the same date unless otherwise agreed by the parties.

3. Respondent shall be further entitled to custody of the minor children for a two (2) week period during the summer, such custody to be under the supervision of the Hall County Welfare department, they to undertake such supervision upon notification by the Petitioner. The visitation referred to shall take place during the last two (2) weeks of the month of July.

4. Respondent shall pay child support in the sum of $100.00 per month per child, commencing forthwith. The Court in setting child support is taking into consideration the travel time involved on the part of the Respondent in light of the Petitioner's present residence in Fort Morgan, Colorado.

Respondent has appealed to this court and, as assignments of error, claims that the trial court abused its discretion in awarding custody to the petitioner, in setting the visitation rights for respondent, and in failing to make any finding whether petitioner was granted permission to leave the jurisdiction with the parties' children, which departure from the jurisdiction was a substantial change of circumstances constituting sufficient basis for changing custody from petitioner to respondent. In addition to the foregoing assignments of error, the respondent claims that the "doctrine of 'unclean hands' " prevents "affirmative relief under the court's equity jurisdiction."

In an appeal involving actions for dissolution of marriage, the Supreme Court's review of a trial court's judgment is de

novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the Supreme Court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984). See, also, *Parsons v. Parsons*, 219 Neb. 736, 365 N.W.2d 841 (1985).

In placing a child's custody with a parent in a dissolution proceeding, a court's primary and paramount consideration is the best interests of the child. Some factors or circumstances which may be considered in a court's determination of a child custody issue include considerations of the fitness of the parents; the respective environments offered by each parent; the emotional relationship between a child and each parent; the child's age, general health, welfare, and social behavior; the effect on a child if a particular parental relationship is continued or disrupted; parental attitude and stability of character; parental capacity to furnish physical care, education, and other reasonable needs of a child; and, when appropriate, the desires and wishes of a child. See, Neb. Rev. Stat. § 42-364 (Reissue 1984) (custody determination); *Moeller v. Moeller*, 215 Neb. 360, 338 N.W.2d 749 (1983); *Wible v. Wible*, 209 Neb. 708, 310 N.W.2d 515 (1981).

After our de novo review of the record and in view of the conflicting evidence presented to the trial court, we are unable to conclude that the trial court abused its discretion in deciding the issue of custody of the Gerber children, and, therefore, we affirm the district court's judgment on custody of the Gerber children placed with the petitioner.

In determining whether a noncustodial parent will have visitation rights and the nature of such visitation rights, the best interests of a child are the primary and paramount consideration by a court. See, *Gottschall v. Gottschall*, 210 Neb. 679, 316 N.W.2d 610 (1982); *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980); *Jafari v. Jafari*, 204 Neb. 622, 284 N.W.2d 554 (1979).

Ordinarily, a noncustodial parent's visitation rights are

exercisable within the jurisdiction, unless the best interests of the child require otherwise. See, *Boll v. Boll*, 219 Neb. 486, 363 N.W.2d 542 (1985); *Gottschall v. Gottschall, supra; Jafari v. Jafari, supra; Erks v. Erks*, 191 Neb. 603, 216 N.W.2d 742 (1974).

In proceedings to dissolve a marriage, placing a child in the custody of a parent does not prevent the custodial parent's departure from the jurisdiction at the risk of losing child custody. See, *Korf v. Korf*, 221 Neb. 484, 378 N.W.2d 173 (1985); *Boll v. Boll, supra.*

Before a court will permit removal of a child from the jurisdiction, generally, a custodial parent must establish that such removal is in the best interests of the child and must demonstrate that departure from the jurisdiction is the reasonably necessary result of the custodial parent's occupation, a factually supported and reasonable expectation of improvement in the career or occupation of the custodial parent, or required by the custodial parent's remarriage. See, *Vanderzee v. Vanderzee*, 221 Neb. 738, 380 N.W.2d 310 (1986); *Korf v. Korf, supra; Boll v. Boll, supra; Gottschall v. Gottschall, supra.*

Ordinarily, if parental visitation is in a child's best interest, a court determines the nature and extent of visitation rights on a case-by-case basis and may consider many factors and circumstances in each individual case, such as age and health of the child; character of the noncustodial parent; the place where visitation rights will be exercised; frequency and duration of visits; the emotional relationship between the visiting parent and the child; the likely effect of visitation on the child; availability of the child for visitation; likelihood of disrupting an established lifestyle otherwise beneficial to the child; and, when appropriate, the wishes of the child. See *Heyne v. Kucirek*, 203 Neb. 59, 277 N.W.2d 439 (1979). See, also, 24 Am. Jur. 2d *Divorce and Separation* §§ 999 et seq. (1983); 27C C.J.S. *Divorce* §§ 632 et seq. (1986). The aforementioned factors or circumstances are neither exhaustive nor absolutely inflexible in determining any aspect of a noncustodial parent's visitation rights.

We find that the Gerber children's living with petitioner at

Fort Morgan, Colorado, is appropriate under the circumstances and is in the best interests of the Gerber children. Also, such finding is implicit in the district court's order on respondent's visitation of his children, especially in light of the fact that the children have resided with petitioner at Fort Morgan since October 1984. Under the circumstances, however, we find there has been an abuse of discretion by the trial court in its judgment entered concerning respondent's visitation rights, which we hereby modify as follows:

1. On the last Saturday of each month and the immediately succeeding Sunday after such last Saturday of the month, respondent shall be entitled to visit his children in Fort Morgan, Colorado, between the hours of 9 a.m. and 7 p.m. on each such day of weekend visitation, as aforedescribed, provided, if such visitation regarding the final Saturday and succeeding Sunday would occur on a weekend otherwise involved in visitation specifically prescribed by this modification, then the provisions regarding such other prescribed visitation shall control respondent's visitation of his children.

2. During the Christmas holiday, namely, between Christmas Day and New Year's Day, respondent will be entitled to visit his children at respondent's residence in Grand Island, Nebraska, provided, in odd-numbered years such visitation shall include Christmas Day and shall exclude New Year's Day. When such visitation includes Christmas Day, respondent is entitled to pick up his children at Fort Morgan, Colorado, at noon on December 24 and shall return his children to petitioner's residence in Fort Morgan not later than 5 p.m. on December 31. In even-numbered years, respondent shall be entitled to pick up his children in Fort Morgan at noon on December 26 and shall return his children to petitioner's residence in Fort Morgan not later than 5 p.m. on January 2, provided, if January 2 is a schoolday for any of respondent's visiting children, respondent shall return all his children to petitioner's residence in Fort Morgan not later than 5 p.m. on January 1.

3. For the last 2 consecutive weeks in July of each year, respondent shall be entitled to visit his children at Grand Island, Nebraska.

4. For Thanksgiving occurring in an odd-numbered year,

respondent shall be entitled to visit his children in Grand Island. Such visitation shall include Thanksgiving Day and the Friday, Saturday, and Sunday immediately following Thanksgiving. Respondent shall return his children to petitioner's residence in Fort Morgan not later than 5 p.m. on the Sunday immediately after Thanksgiving.

5. For Easter occurring in an even-numbered year, respondent shall be entitled to visit his children in Grand Island. Such visitation shall include the Friday and Saturday immediately before Easter Sunday and Easter Sunday itself, provided, respondent shall return his children to petitioner's residence in Fort Morgan not later than 5 p.m. on Easter Sunday.

6. All times designated for respondent's picking up and returning his children are governed by local time prevailing at Fort Morgan, Colorado. Respondent is responsible for travel arrangements for his children, when travel is necessary for respondent's exercise of his visitation rights. Respondent shall pay all travel expenses for his children concerning exercised visitation rights. All visitation by respondent which occurs at Grand Island, Nebraska, as prescribed by this modification, shall be supervised by the Hall County Welfare Department, as previously ordered by the district court in these proceedings. Petitioner shall notify the Hall County Welfare Department sufficiently in advance of respondent's visitation of his children at Grand Island, Nebraska.

While it is true that respondent, in his November 1984 application, alleged a lack of permission to remove the children from Nebraska and for that reason sought a change of child custody granted to petitioner under the later-vacated decree of October 1984, nevertheless, prior to trial respondent never formally objected to location of his children with petitioner in Colorado. After learning that his children were living in Colorado and without objection on his part, respondent, personally or by counsel, attended at least three hearings and asked the court to determine and specify visitation rights in the light of the children's residence outside Nebraska. We believe that respondent's conduct in requesting visitation rights based on his children's living outside Nebraska and his acquiescence in

the children's living with the petitioner in Colorado for nearly a year after he learned of that situation preclude respondent's invoking any equitable maxim of "clean hands" in relation to petitioner's departure from Nebraska, with the Gerber children, to reside in Colorado.

Respondent has not appealed from the district court's order for child support, which remains in effect as entered.

The judgment of the district court is, therefore, affirmed as modified.

AFFIRMED AS MODIFIED.

GRANT, J., not participating.