JOHN ROSSE AND THERESE ROSSE, APPELLEES, V. VALERIE ANN ROSSE, APPELLANT, AND JOHN EDMOND ROSSE, APPELLEE.

510 N.W.2d 73

Filed January 21, 1994.   No. S-92-252.

Daniel W. Ryberg for appellant.

Michael F. Pistillo, of Steier, Rogers & Pistillo, P.C., for appellees John Rosse and Therese Rosse.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

PER CURIAM.

Valerie Ann Rosse appeals an order of the district court for Douglas County awarding grandparent visitation rights to her daughter's paternal grandparents, Therese Rosse and John Rosse. We affirm the order of the district court.

## FACTS

Valerie Ann and John Edmond (Eddie) Rosse were married on June 18, 1988, in Omaha. A daughter, Isabella, was born to the couple on April 30, 1989. Subsequently, Valerie instituted dissolution of marriage proceedings against Eddie. A decree of dissolution was entered on March 19, 1991, in which Valerie was awarded sole custody of Isabella and Eddie was granted reasonable visitation with Isabella subject to "reasonable non-intrusive supervision by [Valerie] or her designate."

At the time the present case was tried, Eddie was permitted four separate 5-hour visitation periods per month. Eddie, who is employed by an airline, lives in the State of Washington and travels to Omaha twice monthly to exercise his visitation rights with Isabella. During the visitations, Eddie stays with his mother and takes Isabella either to his mother's home or to another family member's home.

On April 5, 1991, Therese Rosse and John Rosse filed a petition in the district court, naming Valerie and Eddie as respondents and requesting grandparent visitation rights with Isabella pursuant to statute. Therese and John were divorced in 1980, but their relationship is amicable, and they agreed to share any visitation rights with their granddaughter that the court would grant them.

The district court granted Therese and John visitation rights with Isabella the first Saturday of every even-numbered month from 10 a.m. to 5 p.m. The court further ordered that Eddie's visitation rights were paramount and would supersede any visitation rights of the grandparents.

Valerie's motion for new trial was overruled, and she timely appealed to this court. Eddie did not appear and was in default in the proceedings.

## ASSIGNMENTS OF ERROR

Summarized, Valerie alleges that the trial court erred in (1) failing to find that the petitioners were estopped from bringing a separate action for visitation because of their participation in, or opportunity to participate in, the prior dissolution proceedings; (2) failing to find that the admission into evidence of affidavits as provided by Neb. Rev. Stat. § 43-1802(2) (Reissue 1988) constitutes hearsay and is a violation of her due process rights; (3) determining that the petitioners were entitled to grandparent visitation rights pursuant to Neb. Rev. Stat. § 43-1801 et seq. (Reissue 1988); and (4) failing to award her attorney fees.

## STANDARD OF REVIEW

This case is one of first impression for this court regarding grandparent visitation rights. However, we have consistently held that, in a dissolution of marriage action, determinations concerning visitation with a minor are initially entrusted to the discretion of the trial judge, whose determinations, on appeal, will be reviewed de novo on the record and affirmed in the absence of abuse of the trial judge's discretion. *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991). We hold that the same standard of review is to be applied to a judicial determination of grandparent visitation rights.

## ANALYSIS

### ESTOPPEL

Valerie first contends that the trial court erred in failing to find that Therese and John are estopped from bringing an action for grandparents' visitation rights. In her answer to Therese and John's petition, Valerie affirmatively alleges that the best interests of the minor child were in issue and were determined in the dissolution proceedings; that the grandparents were privies of Eddie because they had full knowledge of the issues in the dissolution proceedings, controlled the proceedings on his behalf, and paid for and directed the actions of his counsel; and that the grandparents were entitled to become parties in the dissolution proceedings, waived their rights, and are now estopped from litigating the issue of the child's best interests as it relates to visitation.

This is a somewhat novel and rather confusing legal argument. Valerie alleges on one hand that the grandparents were so involved in the dissolution proceeding that they were in privity with Eddie and are now collaterally estopped from pursuing visitation rights, while on the other hand alleging that the grandparents failed to become parties to the action and have thus waived their rights to visitation.

Initially, we consider whether Therese and John are collaterally estopped from bringing a grandparent visitation action at this time. There are four conditions that must exist for the doctrine of collateral estoppel to apply: (1) The identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *McCook Nat. Bank v. Myers*, 243 Neb. 853, 503 N.W.2d 200 (1993); *State on behalf of J.R. v. Mendoza*, 240 Neb. 149, 481 N.W.2d 165 (1992).

We need look no further than the first condition to determine that Therese and John are not collaterally estopped from bringing a grandparent visitation action. Although an informal meeting was held with Valerie and Eddie and their respective counsel to attempt to arrange visitation rights for Therese

during the pendency of the dissolution proceeding, Valerie refused to allow such visitation at that time. The dissolution decree awards Eddie reasonable visitation, but makes no mention of grandparent visitation. Visitation by a father and visitation by grandparents are not identical issues. Thus, the first condition for collateral estoppel has not been met, and therefore, the collateral estoppel doctrine does not apply to the facts of this case.

The issue of whether petitioners have waived their rights by failing to intervene in Valerie and Eddie's dissolution proceeding is controlled by the applicable statutes. Section 43-1802(1) provides that "[a] grandparent may seek visitation with his or her minor grandchild if . . . (b) [t]he marriage of the child's parents *has been dissolved or a petition for the dissolution of such marriage has been filed*, [and] is still pending, but no decree has been entered." (Emphasis supplied.)

Section 43-1803(1) provides in relevant part:

> If the marriage of the parents of a minor child *has been dissolved or a petition for the dissolution of such marriage has been filed*, is still pending, but no decree has been entered, a grandparent seeking visitation shall file a petition for visitation in the district court in the county *in which the dissolution was had or the proceedings are taking place.*

(Emphasis supplied.)

In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning; when the words of a statute are plain, direct, and unambiguous, no interpretation is necessary or will be indulged to ascertain their meaning. *Malzahn v. Transit Authority, ante* p. 425, 507 N.W.2d 289 (1993); *In re Application of City of Lexington, ante* p. 62, 504 N.W.2d 532 (1993).

Sections 43-1802 and 43-1803 are both written in the disjunctive and permit a grandparent visitation action to be initiated *either* during the dissolution proceeding *or* after the marriage of the parents has been dissolved. Although Valerie strenuously argues that the statutes intend that a grandparent seeking visitation join in the dissolution action and that no reasonable person could construe the statutes to require

defending two separate suits, such an interpretation simply cannot be reconciled with the plain language of the statutes. If the grandparent visitation statutes as written impose an unreasonable burden upon litigants, that matter must be addressed by the Legislature, rather than by this court. In connection with this assignment of error, Valerie also contends that the trial court erred in sustaining an objection to her offer of proof on the extent to which Therese had participated in the dissolution proceeding. Valerie sought to have Therese testify that Therese had assisted Eddie in obtaining the services of an attorney, that Therese had participated as a member of Eddie's "divorce team," and that grandparent visitation rights had been discussed as part of the dissolution proceeding. Counsel for Valerie stated that the testimony was offered for the purpose of showing that Therese and John should be estopped from bringing their grandparent visitation action.

In a civil case, to constitute reversible error, admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about the evidence admitted or excluded. *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992). Since we have already determined that Therese and John are not collaterally estopped from bringing their grandparent visitation action on the basis that the identical issue before the court had not been determined in a prior action, any error in excluding evidence of Therese's participation in the dissolution proceeding would not unfairly prejudice any substantial right of Valerie's and, thus, would be harmless. This assignment of error is without merit.

### ADMISSION OF AFFIDAVITS

Next, Valerie argues that the trial court erred in admitting an affidavit into evidence in violation of her due process rights. Over Valerie's objection, the court received into evidence the affidavit, with the exception of one paragraph which the court omitted for lack of foundation, of a physician from Oregon expressing the opinion that a relationship between Therese and Isabella would be a positive one for Isabella.

Valerie concedes in her brief that another witness "testified to the same point of fact that [the affidavit] sought to address."

Brief for appellant at 33. That being true, the admission of the affidavit, if constitutionally impermissible, was cumulative to properly admitted evidence and was not prejudicial. See *Behm v. Northwestern Bell Tel. Co.*, 241 Neb. 838, 491 N.W.2d 334 (1992). This assignment of error is without merit.

ENTITLEMENT TO GRANDPARENT VISITATION RIGHTS

We now turn to the issue of whether the trial court properly granted visitation rights to the petitioner grandparents. Section 43-1802(2) provides in part:

Reasonable rights of visitation may be granted when the court determines by clear and convincing evidence that there is, or has been, a significant beneficial relationship between the grandparent and the child, that it is in the best interests of the child that such relationship continue, and that such visitation will not adversely interfere with the parent-child relationship.

Turning to the first requirement, we note that because this is a case of first impression involving the grandparent visitation statutes, this court has not expounded on what constitutes a "significant beneficial relationship" between a grandparent and a grandchild. However, it is obvious that such a relationship is fact-dependent, and thus we proceed to examine this requirement based on the facts of the present case.

Therese, a teacher and educational consultant who was working on a Ph.D. at the time of the hearing, testified that she saw her role as a grandmother as "loving Isabella and having her love me." When Eddie brings Isabella to her house during his scheduled visits, Therese reads to Isabella and does other things with her. In fact, Isabella will not let anyone except Therese read to her.

Therese testified that Isabella trusts her and has fallen asleep in her arms. Therese is able to meet Isabella's physical needs and is able to comfort her when she cries. Isabella calls Therese "Nana Therese," which Therese considers a term of endearment. Isabella hugs and kisses Therese and has told her, "I love you, Nana."

John testified that he and Eddie have taken Isabella to places such as the park and to the zoo. He feels that he has a good

relationship with Isabella. John plays with Isabella, and they have good times together when they go places. He testified that he is willing and able to care for Isabella's physical needs such as feeding and toileting while she would be in his care. Isabella calls John "Grandpa Jack" and gives him kisses, which he considers a sign of affection. John testified that he loves Isabella very much, just as he does all his grandchildren.

Based upon the above facts, there is clear and convincing evidence to support the trial court's finding that the petitioners have a significant beneficial relationship with Isabella. We take into consideration the fact that Isabella was only 2½ years old at the time this case was tried and that a child of that young age is limited by virtue of her life circumstances in establishing any relationships whatsoever.

Next, we turn to the requirement that grandparent visitation not adversely interfere with the parent-child relationship. At trial, Valerie testified that both grandparents are two-faced to her. She further testified that Therese was a liar and could not be trusted to care for Isabella in the way Valerie preferred. These accusations were mostly general. Valerie did testify that she does not allow Isabella to have candy and that Isabella had reported to her that Therese had given her a piece of candy on one occasion. In the absence of any evidence that one piece of candy was nutritionally or medically inadvisable for Isabella, Valerie's complaint that Therese gave Isabella candy on one occasion is not sufficient reason to deny visitation rights to the grandparents.

Therese testified that in her house there is a rule against making derogatory remarks against the family of any child present in the home. Both Therese and John testified that they have no animosity toward Valerie.

The trial court did not abuse its discretion in finding by clear and convincing evidence that visitation by the grandparents would not adversely interfere with the parent-child relationship between Valerie and Isabella. Although it is clear from the record that the relationship between Valerie and Therese and John is strained, there is no evidence that either Therese or John interferes in the relationship between Valerie and Isabella.

Finally, in view of these findings, it cannot be said that the

trial court abused its discretion in finding by clear and convincing evidence that it is in the best interests of Isabella for her relationship with Therese and John to continue. The trial court's award of one 7-hour visitation every other month is appropriate in view of the age of the child and the fact that Eddie also exercises visitation rights with Isabella for 5 hours on each of 2 days every other weekend.

Valerie also contends that the trial court erred in failing to require that the grandparents' visitation be done in conjunction with the father's visitation. This assignment of error is not discussed in Valerie's brief. An assignment of error not discussed in an appellant's brief will not be considered by this court. See, *Marple v. Sears, Roebuck & Co., ante* p. 274, 505 N.W.2d 715 (1993); *Swedlund v. City of Hastings*, 243 Neb. 607, 501 N.W.2d 302 (1993).

### ATTORNEY FEES

Finally, Valerie asserts that the trial court erred in failing to award her attorney fees, and she also requests attorney fees in this court. The general rule in Nebraska is that an attorney fee may be recovered only when authorized by statute, or when a recognized and accepted uniform course of procedure allows recovery of an attorney fee. *State ex rel. Reitz v. Ringer, post* p. 976, 510 N.W.2d 294 (1993); *Dunning v. Tallman, ante* p. 1, 504 N.W.2d 85 (1993). The grandparent visitation statutes do not provide for an award of fees, nor is there a uniform course of procedure in these cases which would allow recovery of attorney fees. The trial court did not abuse its discretion in failing to award attorney fees in that court. For the same reasons, we decline to award Valerie an attorney fee for the services of her attorney in this court.

### CONCLUSION

We have fully considered Valerie's remaining assignments of error and find they have no merit. The order of the district court is affirmed.

AFFIRMED.