JOHN F. HOEFT, APPELLEE, V. FIVE POINTS BANK, A NEBRASKA BANKING CORPORATION, APPELLANT.

539 N.W.2d 637

Filed November 9, 1995.   No. S-93-954.

Vincent Valentino, of Angle, Murphy, Valentino & Campbell, P.C., for appellant.

John A. Wolf, of Shamberg, Wolf, McDermott & Depue, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, WRIGHT, and GERRARD, JJ.

WHITE, C.J.

This is an appeal from a jury award of damages to appellee John F. Hoeft, arising from appellant Five Points Bank's breach of an alleged oral contract. At trial, John Hoeft alleged that, under the terms of the contract, Five Points had promised to bear half of the expenses pertaining to a real estate sale in exchange for an assignment of half of the payments due under the sale. The jury found for John Hoeft. Five Points filed a motion for judgment notwithstanding the verdict and a motion for a new trial. These motions were denied by the district court. Five Points appeals the denial of these motions.

Five Points assigns six errors. Four of the errors are based on the district court's overruling of Five Points' motion for judgment notwithstanding the verdict, which was based on its earlier motion for a directed verdict. Five Points contends that the district court erred (1) in failing to direct a verdict finding that John Hoeft had not met his burden of proof to establish the existence of a valid enforceable contract; (2) in failing to direct a verdict finding that John Hoeft had rescinded the oral contract, if one in fact existed; (3) in failing to direct a verdict finding that John Hoeft's suit was barred by the statute of limitations; (4) in failing to direct a verdict finding that if a contract existed, it was barred by the statute of frauds; (5) in permitting Margaret Hoeft, John Hoeft's wife, to be used as a rebuttal witness; and (6) in permitting John Hoeft's counsel to introduce unfair, prejudicial evidence by making reference to John Hoeft's financial condition and by implying a financial conspiracy between Five Points and others. Since the district court properly refused to direct a verdict and did not abuse its discretion in admitting the evidence, we affirm.

John Hoeft and his brother, Thomas (Tom) E. Hoeft, were partners in a limited partnership known as Nebraska Motel Developers (NMD), which invested in a Ramada Inn in Grand Island. In July 1981, John and Tom Hoeft obtained the interests of the other partners and gained control and ownership of NMD. The terms of this buyout required John and Tom Hoeft

to make payments to former partners in addition to continuing to make payments to the mortgagee, First Federal Savings & Loan.

In June 1982, John and Tom Hoeft agreed to sell their interest in the NMD partnership to outside investors, referred to by the parties as the "Huwaldt group." Because the Ramada was losing money at the time of the sale, the brothers agreed to allow the Huwaldt group to defer payments on the purchase until February 1984.

When John and Tom Hoeft agreed to sell their interest in NMD to the Huwaldt group, Tom Hoeft was experiencing financial problems. Tom Hoeft had been unable to pay his portion of expenses arising from the NMD investment, and the brothers determined it was in their best interest for Tom Hoeft to assign his interest over to John Hoeft. On July 2, 1982, Tom Hoeft assigned all money due and payable to him under the Huwaldt group sales agreement to John Hoeft.

During the following 2 years, Tom Hoeft's financial troubles continued, and he had difficulty keeping current on a loan issued by Five Points. In February 1984, Five Points requested additional security. Tom Hoeft assigned his interest in the proceeds from the Huwaldt group sales agreement to Five Points. The alleged oral contract at the heart of this dispute arose out of John Hoeft's and Five Points' resolution of Tom Hoeft's conflicting assignments.

It is disputed by the parties whether John Hoeft learned of the second assignment before or after it was executed. When John Hoeft learned that Tom Hoeft had executed a second assignment, he arranged a meeting with Bill Marshall, a representative of Five Points. John Hoeft testified that he told Marshall that

> the second assignment, as far as I was concerned was really worthless; but that if he wanted to step into Tom's shoes and take half the payments I would do that in return for the fact that he would pick up half the expenses on any of the present expenses that were occurring and also any future ones that were occurring pertaining to that particular contract.

According to John Hoeft, Marshall agreed.

After the meeting, John Hoeft calculated the expenses that had been incurred to date as a result of the NMD contract. John Hoeft prepared a summary of those expenses and determined that Tom Hoeft's half of the expenses totaled $10,313.71. The expenses included accounting and legal fees and amounts paid to former partner Lyle Fisher.

John Hoeft presented the expense summary to Marshall on or about February 17, 1984. Five Points recalculated Tom Hoeft's indebtedness and added $10,313.71 to the amount loaned. A check for that amount, payable to Tom Hoeft and John Hoeft, was issued on February 17 and was cashed by John Hoeft.

John Hoeft testified that Marshall told him to write up a short letter explaining what the parties had agreed upon. John Hoeft did so and copied it to Larry Huwaldt of the Huwaldt group. That letter, dated February 20, 1984, states:

Gentlemen:

I have been made aware that Tom Hoeft has assigned his share of future payments to be made to him from Nebr. Motel Developers, starting with payment No. 3 due April 10, 1984, in the amount of $1,234.60 monthly to Five Points Bank, Grand Island. To the extent that he has and continues to meet his 1/2 obligation of any bill that would come up due to this Motel transaction, I will concur in this reassignment of his interest in these proceeds.

I would, therefore, appreciate it Larry, if you would send direct to the Five Points Bank monthly, starting with payment No. 3 due April 10, 1984, the amount of $1,234.60. In accordance with our previous agreement the balance of the monthly payments will be sent directly to me.

/s/ John Hoeft

The prior agreement referenced in the letter provided that a commission payable to a real estate broker involved in the sale to the Huwaldt group was paid first out of the payments, and then the remaining amount was divided equally between John Hoeft and Tom Hoeft/Five Points.

Marshall's testimony regarding the above differs from that of the Hoeft brothers. Marshall testified that Tom Hoeft offered to give Five Points an assignment of the Ramada contract in order

to get Five Points to release a second mortgage on Tom Hoeft's house and in order to pay interest due on his loan. Marshall stated that Tom Hoeft said he owed John Hoeft money on the assignment and that if Tom Hoeft paid his brother, John Hoeft would release his assignment. Marshall denied making any representations to John Hoeft that Five Points would be responsible for any of Tom Hoeft's obligations or debts under the Huwaldt group sales agreement. Marshall testified that he was surprised at the content of John Hoeft's letter of February 20, but because Marshall thought Five Points was first on the assignment he did not respond.

The Huwaldt group defaulted on its payments in August 1986. John Hoeft and Five Points pursued separate lawsuits against the Huwaldt group and eventually obtained judgments. John Hoeft testified that he contacted Marshall several times and told him that he was incurring expenses but that Marshall refused to pay. Marshall agreed that he had casually discussed expenses with John Hoeft, but stated that John Hoeft had made no demands for payment.

On January 8, 1988, John Hoeft wrote Marshall and, referring to his previous letter of "accommodation," stated in part:

> We have now encountered some complex and difficult problems with the sale of Nebr. Motel Developers, which is near disastrous to me and which it also now makes it impossible for Tom Hoeft to be able to uphold his 1/2 in the obligations we are now facing. These obligations being to previous partners, the sales commission at the time of sale to [the Huwaldt group], accumulating legal fees, and other expenses. Therefore, it has become necessary to make the terms of my Febr. 20th. 1984 letter null and void.

Marshall responded to this letter on January 19, 1988. In his letter, Marshall stated that it was his understanding that John Hoeft had been paid for all expenses that he had incurred on Tom Hoeft's behalf at the time Five Points took the assignment. Marshall further stated that he was unaware of any additional amounts that John Hoeft had advanced on Tom Hoeft's behalf since that date.

In response, John Hoeft wrote that he had incurred expenses arising from the sales commission still owing on the sale to the Huwaldt group and the unnecessary duplication of litigation against the Huwaldt group, such expenses including legal fees, long-distance phone bills, et cetera.

Marshall responded on February 2, 1988:

> Please be advised that we would participate in actual out-of-pocket expenses which you have incurred on behalf of the interest which Tom Hoeft assigned to us. This would include money which you actually paid to [the real estate broker] or money paid in the future.

> We would like these expenses submitted to us, however, so that we may satisfy ourselves that they were incurred on behalf of Tom Hoeft's interest. Since we know of no other possible breaches which have occurred or may occur in the future, we deny that you have any right to revoke the assignment which we have with Tom Hoeft and deny that you have any authority to compromise our claim against Nebraska Motel Developers or all other obligors of that liability.

From February 1988 to December 1990, legal proceedings continued regarding the Huwaldt group's default. The parties ultimately settled in December 1990. On January 21, 1991, John Hoeft submitted an accounting of his "actual out-of-pocket expenses which I have incurred on behalf of the interest in the Nebr. Motel Developers Memorandum assigned to you by Tom." John Hoeft stated, "This is in accordance to your letter of requested expenses dated February 2, 1988." Hoeft indicated some additional expenses would be incurred. Litigation fees, about half of the total expenses, were approximately $166,000. John Hoeft demanded that Five Points pay $82,988.93 on or before January 31, 1991. Five Points refused to pay. On February 15, John Hoeft filed a petition in the district court for Hall County, seeking damages of $82,988.93 arising from Five Points' breach of an oral contract.

The case was tried to a jury. At the close of John Hoeft's case, Five Points moved for a directed verdict, and the court overruled the motion. Five Points renewed its motion for a directed verdict at the close of its evidence, but that motion was

also overruled. The jury returned a verdict in favor of John Hoeft in the amount of $42,000. Five Points filed a motion for a judgment notwithstanding the verdict based on the reasons set forth in its motion for directed verdict: Five Points also filed a motion for a new trial. These motions were overruled, and this appeal followed.

This court is asked to review the district court's overruling of Five Points' motion for judgment notwithstanding the verdict based on its earlier motion for a directed verdict.

> When a motion for directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law.

*Richardson v. Ames Avenue Corp.*, 247 Neb. 128, 129, 525 N.W.2d 212, 214 (1995) (citing *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994)). "Where reasonable minds may differ as to the conclusions or inferences to be drawn from the evidence, or where there is a conflict in the evidence, such issues must be submitted to the jury." *Schuster v. Baumfalk*, 229 Neb. 785, 792, 429 N.W.2d 339, 344 (1988). A jury verdict will not be set aside unless clearly wrong, and it is sufficient if any competent evidence is presented to the jury upon which it could find for the successful party. *Wolf v. Walt*, 247 Neb. 858, 530 N.W.2d 890 (1995); *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993); *Kozeny v. Miller*, 243 Neb. 402, 499 N.W.2d 75 (1993).

Five Points first contends that the district court erred by failing to direct a verdict in favor of Five Points, finding that no oral contract existed. A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract. *Sayer v. Bowley*, 243 Neb. 801, 503 N.W.2d 166 (1993). That party must show that there was a definite offer and an unconditional acceptance with nothing left open for future arrangement. *Id.* "[T]here must also be a meeting of the minds or a binding mutual understanding between the parties to the contract." *Lindsay Ins. Agency v. Mead*, 244 Neb. 645, 652, 508 N.W.2d 820, 825 (1993).

> "A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties themselves as to all of the details of the proposed agreement; it may be implied from conduct and the surrounding circumstances. . . . Likewise, the acceptance of an offer may be shown by words, conduct, or acquiescence indicating agreement."

*Id.*

The record contains sufficient evidence to support the district court's refusal to direct a verdict. John Hoeft testified that, in his February 1984 meeting with Marshall, he told Marshall that he would allow Five Points to receive Tom Hoeft's proceeds under the Huwaldt group sales agreement if Five Points agreed to cover all of Tom Hoeft's financial obligations under the sales agreement. John Hoeft also testified that Marshall agreed and told John Hoeft to write up a letter as to their arrangement. Marshall testified that the February 1984 meeting was not as John Hoeft described, and Marshall claimed there was no agreement as to covering Tom Hoeft's expenses under the Huwaldt group sales agreement. Based on this evidence, reasonable minds could differ as to whether the parties created an oral contract obligating Five Points to pay all of the expenses incurred on Tom Hoeft's behalf in exchange for Tom Hoeft's proceeds under the Huwaldt group sales agreement. Therefore, it was proper for the district court to refuse to direct a verdict and to submit the issue to the jury.

Second, Five Points contends that if there was an oral contract, the district court erred by failing to direct a verdict in favor of Five Points, finding that John Hoeft had unilaterally rescinded the contract. Rescission of contract means

> [t]o abrogate, annul, avoid, or cancel a contract; particularly, nullifying a contract by the act of a party. . . . A "rescission" amounts to the unmaking of a contract . . . and it may be effected . . . by one of the parties declaring rescission of contract without consent of [the] other if a legally sufficient ground therefor exists . . . .

Black's Law Dictionary 1306 (6th ed. 1990). Rescission implies extinction of the contract which leaves the parties without a

right of recovery on the contract itself. *Rubin v. Pioneer Fed. S. & L. Assn.*, 214 Neb. 364, 334 N.W.2d 424 (1983).

Five Points contends that John Hoeft, in his January 8, 1988, letter, unilaterally rescinded any oral contract that may have existed by declaring it null and void, John Hoeft's basis for rescission being that Five Points had failed to meet its obligations under the contract. Therefore, if the contract is rescinded, John Hoeft has no right to recover for breach of contract.

On January 8, 1988, John Hoeft wrote to Marshall and stated that it had become impossible for Tom Hoeft to uphold his half of the expenses. In this letter, John Hoeft declared, "Therefore it has become necessary to make the terms of my Febr. 20th. 1984 letter null and void." He concluded the letter by stating that "the accommodation letter of Feb. 20, 1984 . . . is hereby rescinded and in no further effect." When looking at only the language of John Hoeft's letter, Five Points' contention that John Hoeft rescinded the contract has merit.

However, "[i]n determining whether a rescission took place, courts look not only to the language of the parties but to all the circumstances." *Fritsch v. Hilton Land & Cattle Co.*, 245 Neb. 469, 480, 513 N.W.2d 534, 542 (1994). When looking at all of the circumstances in this case, rescission did not occur. In a note to Marshall accompanying the letter, John Hoeft requested that Marshall call him if Marshall wished to discuss the matter further, leaving open the possibility of rectifying the situation. Five Points responded to John Hoeft's letter by claiming John Hoeft had no right to declare Five Points' assignment as void. Also, in its response, Five Points agreed to pay expenses incurred on Tom Hoeft's behalf and requested that documentation of these expenses be submitted to Five Points. John Hoeft eventually submitted expenses to Five Points which he claimed Five Points owed on Tom Hoeft's behalf. Five Points' letter in response to John Hoeft's January 8, 1988, letter and the parties' subsequent actions together indicate that rescission never occurred.

Because a jury could conclude that, under the circumstances, the contract was not rescinded, the court's denial of the directed verdict on the issue of rescission was proper.

Five Points also contends that John Hoeft's action should have been barred by the statute of limitations and that a directed verdict should have been entered in Five Points' favor. An action upon an oral contract can only be brought within 4 years of the date on which it accrued. Neb. Rev. Stat. § 25–206 (Reissue 1989). An action accrues and the statutory time within which the action must be filed begins to run when the injured party has the right to institute and maintain a lawsuit, although the party may not know the nature and extent of the damages. *Association of Commonwealth Claimants v. Moylan*, 246 Neb. 88, 517 N.W.2d 94 (1994); *Central States Resources v. First Nat. Bank*, 243 Neb. 538, 501 N.W.2d 271 (1993). A cause of action in contract accrues at the time of the breach or failure to do the thing agreed to. *Brtek v. Cihal*, 245 Neb. 756, 515 N.W.2d 628 (1994).

The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the district court on the issue of the statute of limitations normally will not be set aside by an appellate court unless clearly wrong. *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994); *Central States Resources v. First Nat. Bank, supra.*

Neither party moved to have the statute of limitations issue determined as a separate issue before proceeding with the other issues at trial. There were conflicting claims by the parties as to when the cause of action accrued. The district court submitted the statute of limitations issue to the jury, and the jury evidently concluded that the statute of limitations did not bar John Hoeft's action.

The record reflects that a jury could reasonably conclude that the lawsuit was not barred by the statute of limitations. On February 2, 1988, Five Points assured John Hoeft that it "would participate in actual out–of–pocket expenses which you have incurred on behalf of the interest which Tom Hoeft assigned to us. This would include money which you actually paid to [the real estate broker] or money paid in the future." Five Points' February 2 letter would not place Five Points in breach of any oral contract to pay expenses and supports the conclusion that

John Hoeft's cause of action had not accrued as of that date. The petition was filed within 4 years of Five Points' February 2 letter. Therefore, we find no error in the district court's refusal to direct a verdict in favor of Five Points as to its statute of limitations claim.

Five Points also contends that the district court erred in refusing to direct a verdict in its favor, finding that the alleged oral contract was barred by the statute of frauds. The statute of frauds provides that oral contracts consisting of a "special promise to answer for the debt, default, or misdoings of another person" are void. Neb. Rev. Stat. § 36-202(2) (Reissue 1993).

However, "where the principal object of a party promising to pay the debt of another is to promote his own interests, and not to become a guarantor or surety, and the promise is made on sufficient consideration, it will be valid although not in writing." *Heese Produce Co. v. Lueders*, 233 Neb. 12, 19–20, 443 N.W.2d 278, 283 (1989). " 'A consideration to support a promise, not in writing, to pay the debt of another must operate to the advantage of the promisor, and place him under a pecuniary obligation to the promisee independent of the original debt, which obligation is to be discharged by the payment of that debt.' " *VSC, Inc. v. Lilja*, 203 Neb. 844, 845, 280 N.W.2d 901, 903 (1979).

Five Points agreed to pay Tom Hoeft's expenses in exchange for receiving Tom Hoeft's proceeds from the Huwaldt group, not merely to act as a guarantor of Tom Hoeft's liability. The promise was made in order to promote Five Points' interests and was supported by new consideration. Therefore, the case is not within the statute of frauds, and the district court did not err in denying Five Points' motion for a directed verdict.

In addition to assigning error to the district court's refusal to direct a verdict on the issues previously discussed, Five Points contends that the district court erred in admitting certain evidence. First, Five Points contends that the court erred by permitting Margaret Hoeft to be used as a rebuttal witness. Margaret Hoeft testified regarding conversations between her husband, John Hoeft, and Marshall. Second, Five Points contends that the court erred by admitting unfairly prejudicial

evidence regarding John Hoeft's financial condition and evidence implying a financial conspiracy between Five Points and others.

To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. *McDonald v. Miller*, 246 Neb. 144, 518 N.W.2d 80 (1994); *Rosse v. Rosse*, 244 Neb. 967, 510 N.W.2d 73 (1994). The admissibility of evidence is reviewed for abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Walpus v. Milwaukee Elec. Tool Corp.*, ante p. 145, 532 N.W.2d 316 (1995); *Kroeger v. Ford Motor Co.*, 247 Neb. 323, 527 N.W.2d 178 (1995); *Sindelar v. Canada Transport, Inc.*, 246 Neb. 559, 520 N.W.2d 203 (1994).

Concerning the rebuttal testimony, Marshall denied that he had made any promises to pay expenses to John Hoeft in order to gain his assent to Tom Hoeft's assignment to Five Points. Margaret Hoeft testified she was present at a meeting on or about February 15, 1984, and that expenses were discussed. Margaret Hoeft's testimony counteracted evidence introduced by Five Points in its case in chief. It was within the discretion of the trial court to allow such evidence.

Five Points contends that it was unfairly prejudicial for the district court to allow evidence pertaining to settlement, evidence pertaining to John Hoeft having to sell his home, and evidence implying that Marshall was engaged in a financial conspiracy. The record does not support Five Points' claim that it was unfairly prejudiced by the admission of any such evidence.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

LANPHIER and CONNOLLY, JJ., not participating.